Upon review of the competent evidence of record, and finding no good grounds to receive further evidence or rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence, affirms the Opinion and Award of the Deputy Commissioner, with some modification.
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in their Pre-Trial Agreement, filed on 23 April 1998, which is incorporated herein by reference, and at the hearing as:
 STIPULATIONS
1. The Industrial Commission has jurisdiction over the subject matter of this case, the parties are properly before the Commission, and the parties were subject to and bound by the provisions of the North Carolina Workers Compensation Act at all relevant times.
2. Risk Enterprise Management, Ltd., is the carrier on the risk.
3. The employee-employer relationship existed between the parties at all relevant times.
4. The date of the injury alleged is 30 April 1996.
5. Plaintiffs average weekly wage was $332.64, which yields a compensation rate of $221.77, based upon the Form 22 Statement of Days Worked and Earnings of Injured Employee.
6. The issues for determination are:
 a. Whether plaintiff has contracted a compensable occupational disease, and if so, to what benefits may she be entitled under the Act;
 b. Whether plaintiff is entitled to an assessment of attorneys fees pursuant to G.S. 97-88.1;
 c. If plaintiffs claim is compensable, are defendants entitled to a credit for disability benefits provided through a defendant-employer-sponsored program.
7. The parties stipulated the following exhibits into the record:
a. Wake Forest Family Practice Center, fifty-nine pages,
b. North Carolina Baptist Hospital, twenty-six pages,
c. Comp Rehab, twenty-seven pages,
d. Lexington Family Physicians, ten pages,
e. Dr. Frank Shafer, three pages,
f. Dr. Elizabeth Meyerdierks, one page,
g. Dr. Joseph Molnar, ten pages, and
h. Employers Disability Benefits, sixty-five pages.
 ***********
Based upon all of the competent evidence of record, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. Plaintiff is fifty-six years old and a high school graduate. She was hired as a serge sewer on 17 October 1994, where she sewed vinyl protective aprons during her eight-hour work shift.
2. Serge sewing was a production job which required plaintiff to sew 112 dozen aprons per day. Plaintiff averaged sewing 130 dozen aprons per shift, with a high of 150 dozen. Her productivity varied based upon the quality of the material to be sewn and the machine being operated.
3. Plaintiff used a large buggy to push her sewing material to her work area. Once at her workstation, plaintiff sat at the sewing machine and pulled the bundles of aprons onto her worktable. Plaintiff exerted some degree of force on the vinyl pieces to separate them, with the bottom bundles generally requiring a greater effort to separate.
4. After separating the vinyl apron pieces in the bundle, plaintiff grasped the vinyl piece in a pinching motion and guided it through the sewing machine. Plaintiff then placed one finger on the top side of the vinyl while another finger was under it to allow the fabric to run between her fingers. Plaintiff did not have to hold or exert any pressure on the fabric while sewing. Each apron weighed only a few ounces, although they varied in size. After sewing one side of the apron, plaintiff would grasp and flip it over to sew the other side. Plaintiff kept each bundle together on her table.
5. The serge-sewing job required repetitive use of the fingers, hands, and wrists to grasp, separate, guide, sew, flip, and stack the bundles of aprons.
6. Plaintiff testified that she began to experience pain and numbness in both of her hands in April 1996 and that she reported this to her supervisors, Jean Bailey and Paula Hockett.
7. Plaintiffs co-employee, Shirley Kennedy, also testified that plaintiff reported pain and numbness in her hands to her supervisors before plaintiff was involved in the 20 December 1996 motor vehicle accident.
8. On 20 August 1996, plaintiff was seen at the Emergency Room of North Carolina Baptist Hospital for neck and head pain. She was referred to John A. Wilson, M.D., a neurosurgeon with Bowman Gray School of Medicine, for a possible aneurysm. However, an MRI scan and angiogram ruled out aneurysm as the source of plaintiffs head pain. Plaintiff was later diagnosed with musculoskeletal pain. From 30 August 1996 until 16 September 1996, while she was receiving medical treatment, plaintiff received short-term disability benefits through a plan sponsored by defendant-employer.
9. On 19 November 1996, plaintiff sought treatment from Terrence Steyer, M.D., at Wake Forest Family Practice Center. Plaintiff underwent a complete physical and complained of cervical neck strain and tenderness for one months duration. Plaintiff also reported chronic right knee and right foot pain secondary to a childhood accident. Plaintiff did not describe any hand or wrist symptoms, such as numbness or tingling. Dr. Steyer found plaintiff had a decreased sensation at the C5, C6 dermatome of the right arm.
10. On 3 December 1996, plaintiff reported having hives, a temperature, and a swollen face after taking an old prescription for a urinary tract infection.
11. Plaintiff saw William Hubbard, M.D., on 18 December 1996. At this time, she had complaints of increased swelling in her lower extremities from working over the holidays as a seamstress. This work was unrelated to her employment with defendant-employer.
12. On 20 December 1996, plaintiff was involved in a motor vehicle accident when her car was rear-ended by an ambulance. Plaintiff received medical treatment and therapy from Wake Forest Family Practice Center on 23 December 1996. She sustained neck and back injuries in the accident. As a result of her injuries, plaintiff was disabled from work.
13. Following the automobile accident, plaintiff received short-term disability from the employer-sponsored disability plan.
14. On 3 February 1997, Douglas Browning, M.D., authorized plaintiff to return to work on 4 February 1997 for two hours per day for two weeks. Defendant-employer notified Dr. Browning that defendant-employer would prefer to have plaintiff remain out of work until she could return to full time duty.
15. On 11 February 1997, plaintiff was again rear-ended in an automobile accident. Plaintiff was seen by her family doctor with complaints of stinging in her chest, pain under the left arm, pain in the trapezius muscles, headache, and right ear pain.
16. On 15 April 1997, plaintiff first complained to Dr. Browning of numbness in her hands.
17. On 7 May 1997, Joseph Molnar, M.D., saw plaintiff for a laceration to her left index finger. Physical therapy was ordered, and plaintiff was excused from work until 16 July 1997.
18. On 3 June 1997, plaintiff continued to complain of neck and back pain, as well as numbness radiating from both shoulders to her hands.
19. On 17 June 1997, Dr. Steyer diagnosed plaintiff with bilateral carpal tunnel syndrome.
20. On 19 August 1997, plaintiff first provided notice to defendant-employer of her claim that her bilateral carpal tunnel syndrome was related to her job.
21. Following the 20 December 1996 automobile accident, plaintiff was out of work until 1 April 1997. Plaintiff worked two hours per day on 2 April 1997 and 3 April 1997. On 3 April 1997, she left work due to neck, back, and head pain.
22. Plaintiff returned to work for eight hours on 27 May 1997. Plaintiff only worked three and one-half hours on 28 May 1997 because of the finger laceration.
23. Between 21 July 1997 and 30 July 1997, plaintiff worked forty-eight hours.
24. Following the 20 December 1996 motor vehicle accident, plaintiff did not return to the sewing job. She was placed in light duty, non-production jobs.
25. Plaintiff sought medical treatment throughout the fall of 1996 for various medical conditions, and she did not report hand or wrist complaints to any of her treating physicians. Plaintiff did not report tingling and numbness in her hands to her supervisors before her automobile accident on 20 December 1996. In light of the evidence as a whole, the testimony of plaintiff and Shirley Kennedy are not accorded weight on this issue.
26. Plaintiffs bilateral carpal tunnel syndrome was not caused or significantly contributed to by her employment with defendant-employer, and her job did not place her at increased risk for contracting her condition as compared to members of the general public not so employed.
 ***********
Based on the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSION OF LAW
1. Plaintiff failed to prove that her bilateral carpal tunnel syndrome was characteristic of and peculiar to her employment with defendant-employer and that her employment with defendant-employer caused or significantly contributed to the development of her condition. Accordingly, plaintiff did not sustain an occupational disease under the Act. G.S. 97-53(13).
 ***********
Based upon the foregoing findings of fact and conclusion of law, the undersigned enters the following:
 AWARD
1. Plaintiffs claim is DENIED.
2. Defendants shall pay the costs.
 S/______________ RENE C. RIGGSBEE COMMISSIONER
CONCURRING:
S/_______________ LAURA K. MAVRETIC COMMISSIONER
S/___________________ BERNADINE S. BALLANCE COMMISSIONER